# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| ELIZABETH GOODWIN, | No. 52019-2-II |
| --- | --- |
| Respondent, | |
| v. | |
| JEREMY HOLLIS, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Jeremy Hollis appeals the superior court's denial of his motion to revise a domestic violence protection order (DVPO) that restrained him from having any contact with his daughter, H.H.,[1] or the daughter's mother, Elizabeth Goodwin. He challenges the commissioner's findings, adopted by the superior court, which (1) any of his acts placed H.H. or Goodwin in fear of imminent physical harm and (2) he committed an act of domestic violence outside the scope of permissible discipline when he sprained H.H.'s wrist following an incident involving an iPod. He further challenges the order to surrender weapons that was predicated on the court's conclusion that he posed a credible threat to the physical safety of H.H. and/or Goodwin.

Goodwin counters that the commissioner properly issued the DVPO and that the superior court properly denied Hollis's motion to revise. She asserts that the commissioner's findings were supported by the evidence.

---

[1] We use the initials H.H. throughout to refer to Hollis and Goodwin's minor child.

We affirm the superior court's denial of Hollis's motion to revise. We hold that although interpretation of the evidence may differ, there is substantial evidence in the record sufficient for the superior court to find that Hollis engaged in acts that placed both Goodwin and H.H. in reasonable fear of imminent harm and that Hollis committed a discrete act of assault that exceeded the range of permissible corrective discipline when he sprained H.H.'s wrist. These findings are sufficient to support the superior court's conclusions that Hollis committed domestic violence and that he posed a credible threat to the physical safety of H.H. Accordingly, the superior court did not abuse its discretion when it denied Hollis's motion to revise the DVPO because there was a substantial basis on which to uphold the order. For the same reason, we hold that Hollis's challenge to the order to surrender firearms fails because that order is predicated on the conclusion that Hollis posed a credible threat to the physical safety of the protected persons.

FACTS

I. TEMPORARY RESTRAINING ORDER AND PARENTING PLAN

Hollis and Goodwin are parents in common to H.H. Hollis and Goodwin lived together for some time but never married. The two separated in 2010, when H.H. was five years old.

Hollis had regular visitation with his daughter following the separation. Goodwin recalled that upon picking H.H. up from Hollis, H.H. "would not talk, she would scream, she would be in a fetal position on the bed. She would be in the -- in the closet." Report of Proceedings (RP) (Dec. 6, 2017) at 45. In April 2016, a temporary restraining order was issued restricting Hollis's contact with H.H.

Goodwin sought the restraining order on behalf of H.H. following an incident in which Hollis's then fiancé claimed H.H. took her iPod back to Goodwin's house without asking

2

permission. Hollis went to Goodwin's house to retrieve the iPod and to discuss the matter with H.H., but H.H. resisted speaking with him. At some point, Hollis "tried to get [H.H.] out of bed" so that he could speak to her. *Id.* at 58. Hollis later received notice regarding the temporary restraining order and that Child Protective Services (CPS) was conducting an investigation related to that event. CPS eventually determined that the report of child abuse was unfounded.

Goodwin's account of that same event differed. Goodwin claimed that Hollis came into the house uninvited and "started pulling on [H.H]." *Id.* at 49. This pull resulted in a sprain.

The temporary restraining order never went to a hearing. Instead, Goodwin agreed not to seek a restraining order on the condition that the parties create a parenting plan that gave H.H. full control over whether she would have any residential time with Hollis. Goodwin testified that it was her belief that she and Hollis had agreed, as part of this arrangement, that Hollis would not contact H.H.

In the year and a half after Hollis and Goodwin modified the parenting plan to restrict Hollis's residential time with H.H., H.H. did not request visitation with Hollis. However, Hollis did go to H.H.'s school to drop off holiday and birthday cards, but he did not mail those cards for fear that Goodwin might not give them to H.H.

## II. PROTECTION ORDER

In October 2017, Goodwin found suicide notes and pictures beneath H.H.'s bed. There was a suicide note addressed to each parent, and the one addressed to Hollis stated, "It is your fault! You put me through deep dark depression you made me suicidal." Clerk's Papers (CP) at 119. Prior to that, in April 2017, H.H. disclosed to Goodwin that Hollis had sexually assaulted her at some point. Goodwin took H.H. to the emergency room out of concern for her safety related to

the sexual assault disclosures and related to H.H.'s revelations that she was contemplating suicide. H.H. was admitted for inpatient treatment. The hospital intake notes describe a history of self-harm, prior attempted suicide, mood swings, depression, and anxiety. The intake notes also state that H.H. described sex abuse by her father.

Goodwin filed a petition for protection in June 2017, seeking protection for herself and H.H., then 13 years old, from Hollis. Goodwin claimed that due to Hollis's verbally and mentally abusive behavior, H.H. struggled with mental health issues and has required counseling. Goodwin stated that Hollis had "explosive behaviors" that caused her to fear retaliation from Hollis following H.H.'s disclosures. *Id.* at 5. Goodwin described prior events in which Hollis would leave messages, pound on the front and back doors, and make threatening statements through the door. Goodwin also noted that Hollis had a gun safe and a concealed weapons permit.

A temporary protection order was initially filed in June 2017 and was reissued on several occasions. The superior court delayed hearing the matter to await resolution of the sexual assault allegations by CPS and to await the results of the criminal investigation. CPS determined that the allegations were founded, but Hollis was in the process of appealing the findings. The prosecutor did not appear to move forward with a criminal action related to the sexual assault allegations by the time the commissioner held a hearing on the protective order.

In December 2017, the court commissioner held a hearing on the issuance of the protection order with both parties present. After hearing testimony from both parties, the commissioner granted the DVPO. The commissioner declined to make a finding regarding whether the sexual assault had occurred. However, the commissioner did find that H.H. suffered "significant psychological harm" based on evidence from the medical records that showed H.H. was in

counseling, she has engaged in "significant self-harm. She's been admitted for inpatient treatment," and these issues "appear[] to stem from whatever her relationship is with Mr. Hollis." RP (Dec. 6, 2017) at 74. The commissioner further found that

> [w]hatever has been occurring is significant enough that this child would rather end her life than have communication with Mr. Hollis. And whether or not it was physical abuse, emotional abuse, mental abuse, sexual abuse -- whatever it is is certainly significant enough that this has created a significant issue sufficient enough for me to enter an order of protection based off of that.

*Id.* at 74-75.

The commissioner noted that according to *Rodriguez v. Zavala*, 188 Wn.2d 586, 590-91, 398 P.3d 1071 (2017), he may find domestic violence "off of a parent's concern[] for psychological harm for a child." RP (Dec. 6, 2017) at 74. The commissioner noted that whatever was occurring between Hollis and H.H., "it [was] significant enough that this child would rather end her life than have communication with Mr. Hollis," and "this has created a significant issue sufficient enough for me to enter an order of protection." *Id.* at 74-75.

The protection order was filed on December 6, 2017, and contained written, boilerplate "findings" that Hollis committed domestic violence as defined in former RCW 26.50.010(1) (2015) and that he posed a credible threat to the physical safety of the protected persons.[2] Hollis was also ordered to surrender weapons and firearms.

---

[2] Although the order for protection labels the statements that "Respondent Committed domestic violence as defined in RCW 26.50.010" and "Respondent presents a credible threat to the physical safety of the protected person/s" as findings of fact and describes the "conclusion" as the relief granted, we are not bound to so treat them. CP at 23. Where a conclusion of law is mislabeled as a finding of fact, we review it as a conclusion of law. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

"'If a determination concerns whether the evidence showed that something occurred or existed, it is properly labeled a finding of fact.'" *In re Welfare of A.L.C.*, 8 Wn. App. 2d 864, 871, 439 P.3d 694 (2019) (internal quotations marks omitted) (quoting *Goodeill v. Madison Real Estate*,

III. MOTION FOR REVISION

Hollis filed a motion to revise the protection order. The superior court remanded to the court commissioner, requesting that he clarify his findings. The commissioner did not take additional argument or evidence from the parties.

On remand, the commissioner found that Hollis sprained H.H's wrist during the "iPod incident" in April 2016. RP (Apr. 3, 2018) at 6. The commissioner concluded that this injury exceeded the scope of permissible discipline and the allegations were "sufficient for the Court to find that an act of physical harm, bodily injury, or assault had occurred." *Id.* at 7.

The commissioner reiterated that he would not make a finding regarding whether the sexual assault occurred, but that he found credible the fact that H.H. made disclosures to Goodwin related to the sexual assaults.

In addition, the commissioner found that the parties agreed, by way of their parenting plan, that Hollis would have no contact with H.H. unless it was initiated by H.H. This agreement was made "in lieu of Ms. Goodwin pursuing an actual restraining order." *Id.* at 10. But in spite of this agreement, Hollis continued to contact H.H. by dropping holiday and birthday cards off at her

191 Wn. App. 88, 99, 362 P.3d 302 (2015)). But "'if a determination is made by a process of legal reasoning from, or interpretation of the legal significance of, the evidentiary facts, it is a conclusion of law.'" *Id.* at 872 (internal quotation marks omitted) (quoting *Goodeill*, 191 Wn. App. at 99).

Determining whether Hollis's conduct equates to something that the statute defines as "domestic violence" necessarily invokes the process of legal reasoning, and so this statement in the protection order will be treated as a conclusion of law. *See Id.* at 872. The same is true of the statement that "Respondent presents a credible threat," because in order to make this determination, the superior court was required to take stock of the evidence, interpret the legal significance of the evidentiary facts, and determine whether Hollis posed a threat that was credible. CP at 23. Such reasoning involves more than mere consideration of whether the facts show something occurred or existed and may be more properly construed as a legal conclusion. *See A.L.C.*, 8 Wn. App. 2d at 871-2.

school. The commissioner was unpersuaded by Hollis's argument that because he had not had *actual* visitation with H.H., there was no evidence of fear of imminent harm.

The cumulative effect of these facts led the commissioner to conclude that Goodwin and H.H. were placed in fear of imminent physical harm, bodily injury, or assault. In addition, the commissioner found Goodwin's testimony regarding the iPod incident and the sprain that H.H. sustained on her wrist credible, and he concluded that these facts "would be a sufficient basis for the Court to find an order of protection." *Id.*

Following the commissioner's clarification of his findings, the superior court determined that there was a "sufficient basis for the court commissioner's ruling." CP at 81. The superior court denied Hollis's motion to revise.

## DISCUSSION

Hollis assigns error to two of the superior court's findings,[3] arguing that that there was insufficient evidence in the record to show that (1) Hollis committed any acts that would place H.H. or Goodwin in fear of imminent harm or (2) Hollis did anything more than cause a minor injury to H.H. when he sprained her wrist while attempting to speak to her regarding the iPod. Thus, Hollis argues, the superior court's findings did not support its conclusion of law that he committed an act of domestic violence. In addition, Hollis challenges the superior court's conclusion that he posed a credible threat to the physical safety of H.H. and, therefore, the superior court erred when it ordered him to surrender all of his firearms. On the basis of these claims,

---

[3] Because the superior court adopted the commissioner's factual findings, we refer to the findings as the findings of the superior court.

Hollis asserts that the superior court erred when it denied his motion to revise the protection order. We disagree.

We hold that the superior court did not abuse its discretion when it denied Hollis's motion to revise the DVPO. Substantial evidence in the record supports the superior court's factual findings, which, in turn, support the legal conclusions that Hollis committed domestic violence and posed a credible threat to H.H.'s and Goodwin's safety. Hollis's contentions are all predicated on a disagreement regarding the credibility, persuasiveness, and weight of the evidence that supported the superior court's findings, which is beyond the scope of our review.

## I. LEGAL PRINCIPLES

### A. STANDARD OF REVIEW

A court commissioner's decision is subject to revision by the superior court. RCW 2.24.050. The superior court will then review both the commissioner's findings of fact and conclusions of law de novo. *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). If the superior court agrees with the commissioner's decision and denies the motion to revise, the superior court has then adopted the commissioner's findings of fact and conclusions of law as its own. *Maldonado v. Maldonado*, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). A commissioner's oral findings that are adopted by the revision court are sufficient for review. *In re Marriage of Williams*, 156 Wn. App. 22, 28, 232 P.3d 573 (2010). On appeal, we review the superior court's ruling, not the commissioner's. *In re Matter of Knight*, 178 Wn. App. 929, 936, 317 P.3d 1068 (2014).

We review a superior court's decision to grant or deny a DVPO for abuse of discretion. *Rodriguez*, 188 Wn.2d at 590-91. The decision below will not be disturbed unless it was

manifestly unreasonable or based on untenable grounds or reasons. *In re Marriage of Freeman*, 169 Wn.2d 664, 671, 239 P.3d 557 (2010).

Where, as here, "the trial court acts as a fact-finder, appellate review is limited to whether substantial evidence supports the trial court's findings and whether the findings support its conclusions of law." *In re Dependency of Schermer*, 161 Wn.2d 927, 940, 169 P.3d 452 (2007). "'Questions of law and conclusions of law are reviewed de novo.'" *Hegwine v. Longview Fibre Co.*, 162 Wn.2d 340, 353, 172 P.3d 688 (2007) (quoting *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003)).

When factual findings are challenged on appeal, we review the findings for substantial evidence. *In re Marriage of Fahey*, 164 Wn. App. 42, 55-56, 262 P.3d 128 (2011). Substantial evidence supports the superior court's findings where the record contains sufficient evidence "to persuade a rational, fair-minded person of the truth of the finding." *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). The party challenging a finding bears the burden of showing that it is not supported by the record. *Scott's Excavating Vancouver, LLC v. Winlock Props., LLC*, 176 Wn. App. 335, 342, 308 P.3d 791 (2013). We will view the evidence in the light most favorable to the prevailing party below. *Id.* Unchallenged findings are verities on appeal, and challenged findings are also binding on this court if they are supported by substantial evidence. *In re Disciplinary Proceeding Against Pfefer*, 182 Wn.2d 716, 724, 344 P.3d 1200 (2015).

Evidence may be substantial even if it is susceptible to more than one reasonable interpretation. *Sherrell v. Selfors*, 73 Wn. App. 596, 600-01, 871 P.2d 168 (1994). And on review, we must "defer to the trier of fact on the persuasiveness of the evidence, witness credibility, and conflicting testimony." *Knight*, 178 Wn. App. at 937. Therefore, we will not disturb a superior

court's finding of fact if substantial, though conflicting, evidence supports the finding. *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010).

B. DOMESTIC VIOLENCE PROTECTION ORDER

RCW 26.50.020(1)(a) provides that "[a]ny person may seek relief under this chapter by filing a petition with a court alleging that the person has been the victim of domestic violence committed by the respondent." In addition, a person may file a petition for protection on behalf of minor household members. RCW 26.50.020(1)(a).

The petition for relief must allege the existence of domestic violence and must be accompanied by an affidavit made under oath stating the specific facts and circumstances from which relief is sought. RCW 26.50.030(1). The definitional statute within the protection order chapter states in pertinent part,

> "Domestic violence" means: (a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, . . . (b) sexual assault, . . . or (c) stalking . . . of one family or household member by another family or household member.

Former RCW 26.50.010(1).

Upon notice and after a hearing, former RCW 26.50.060 (2010) authorizes the superior court to grant or deny a DVPO. *Aiken v. Aiken*, 187 Wn.2d 491, 498, 387 P.3d 680 (2017). In granting the order, the court may "exclud[e] the respondent from a dwelling, prohibit[] the respondent from coming within a certain distance from the petitioner or a minor child, restrain[] the respondent from having any contact with the petitioner or minor child, and grant[] other relief as appropriate." *Id.* (citing RCW 26.50.060(1)). When the order restricts an individual's contact with his or her minor children, the order must be set for a fixed period, not exceeding one year, which may be renewed following a hearing. *Id.* (citing RCW 25.50.060(2)).

Upon issuing a protective order under ch. 26.50 RCW, the court must also order the respondent to surrender all firearms and dangerous weapons when certain statutory conditions exist. Former RCW 9.41.800(3) (2014). When (1) the respondent has actual notice of the hearing and an opportunity to participate, (2) the order restrains the respondent "from harassing, stalking, or threatening" the intimate partner or child or prohibits the respondent from "engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child," (3) the order contains a finding that the respondent "represents a credible threat to the physical safety of the intimate partner or child," and (4) the order, "[b]y its terms, explicitly prohibits the use, attempted use, or threatened use of physical force against the intimate partner or child," the court is compelled to order the respondent to surrender all dangerous weapons and firearms. Former RCW 9.41.800(3).

## II. ANALYSIS

### A. FEAR OF IMMINENT HARM

Hollis challenges the superior court's findings that his conduct placed H.H. and Goodwin in imminent fear, arguing instead that their fear was "entirely self-generated" because he had not seen H.H. in a year and a half due to the parenting plan that restricted his visitation with her. Br. of Appellant at 20. He argues that because there was no evidence of any causal nexus between his conduct and H.H.'s and Goodwin's fear, the superior court erred in finding that he committed domestic violence under the "fear of imminent physical harm" prong of former RCW 26.50.010(1) and erred in declining to revise the commissioner's issuance of the protection order. We disagree.

Hollis essentially asks us to reweigh the evidence before the commissioner and the superior court to arrive at a different result. But it is exclusively the province of the superior court to weigh

the evidence. *Knight*, 178 Wn. App. at 937. Below, the superior court considered the fact that Hollis had not seen H.H. for over a year due to the restrictive parenting plan. However, the superior court nevertheless concluded that the protection order was necessary because "there was [sic] continued attempts at contact, and while there wasn't [sic] visits, that was through the agreement of the parties, and in lieu of Ms. Goodwin pursuing an actual restraining order." RP (Apr. 3, 2018) at 10.

Hollis's task on review is to convince us that the superior court's findings are not supported by the record. *Scott's Excavating*, 176 Wn. App. at 342. Hollis does not dispute the fact that he continued to attempt contact with H.H. through holiday and birthday cards. Instead, he disputes only the superior court's interpretation of those attempts at contact as something that would cause H.H. or Goodwin to be in fear. Evidence may still be substantial where more than one reasonable interpretation exists. *Sherrell*, 73 Wn. App. at 600-01.

In addition, Hollis states that he did not exceed the scope of permitted contact in the parenting plan because the plan did not constitute a total restriction on contact, and he alleges that neither parent testified below that the parenting plan was a total restriction on contact. However, the record reflects that Goodwin understood that when she agreed to drop the restraining order, Hollis agreed not to contact H.H. at all unless H.H. "agreed to, initiated, or consented to" the contact. RP (Apr. 3, 2018) at 8. The superior court found this testimony credible. Accordingly, substantial evidence supports the finding that Hollis attempted contact with H.H. in violation of the agreement between the parents.

Substantial other evidence supports the finding that Hollis caused Goodwin's and H.H.'s fear. In *Rodriguez*, our Supreme Court held that "the definition of 'domestic violence' allows a

petitioner to seek relief based on a general fear of harm between family members." 188 Wn.2d at 594. Therefore, a parent's fear that the restrained individual poses a threat of imminent harm to their child is a sufficient basis on which to seek a protection order. *Id.* at 599.[4] "[H]arm caused by domestic violence can be physical or psychological." *Id.* at 596.

The superior court relied on *Rodriguez* in finding that based on Goodwin's testimony regarding her concern for H.H.'s psychological state and H.H.'s threats of self-harm, there was sufficient evidence that Hollis's conduct placed Goodwin in fear of imminent harm to H.H. The superior court reviewed medical records, which detailed H.H.'s history of suicidal ideation, self-harming, and the emotional trauma she experienced. The superior court noted that the issues identified in these medical records appeared to "stem from whatever [H.H's] relationship [was] with Mr. Hollis." RP (Dec. 6, 2017) at 74. The superior court also reviewed two suicide notes that H.H. wrote—one addressed to Goodwin and the other addressed to Hollis—in which H.H. specifically stated that Hollis was the cause of her mental health issues. The trial court also heard testimony from Goodwin that prior to the restrictive parenting plan, H.H. would return from

---

[4] *Rodriguez* may be read to suggest that where a parent petitions for a DVPO on behalf of their minor child based on the parent's fear, such fear must also be "reasonable" because the court described the mother's fear as reasonable in that case. *Rodriguez*, 188 Wn.2d at 588, 599. However, the court in *Rodriguez* did not explicitly state that a finding of objectively "reasonable fear" was necessary in order to issue a DVPO on that basis. *Id.* Where a protected person seeks a *permanent* restraining order, the court is required to make an additional finding that the protected person is reasonably in fear of an imminent threat of future acts of domestic violence. *Freeman*, 169 Wn.2d at 676. In a footnote, the court in *Rodriguez* recognized this distinction and stated that the mother was not required to demonstrate a "'reasonable fear of future harm'" because she sought a restraining order for a minor child that would expire in one year. 188 Wn.2d at 595 n.4. For such a protection order, "[n]o showing of 'actual risk of future harm' is required" under the statute. *Id.* (quoting RCW 26.50.060(2)). The same is true here because the DVPO was set to expire one year from the date it was issued.

residential time with Hollis in a distraught state wherein she "would not talk, she would scream, she would be in a fetal position on the bed." *Id.* at 45.

Hollis's act of spraining H.H.'s wrist while arguing with her over the iPod further supports the superior court's finding that Hollis placed H.H. and Goodwin in fear of imminent harm. Hollis does not dispute that the iPod incident occurred; he disputes only the severity of the event and the determination that it exceeded the scope of permissible discipline. While Goodwin's and Hollis's testimony differed regarding whether H.H. sustained an injury when Hollis attempted to get H.H. out of bed, the superior court found Goodwin's testimony credible. "The reviewing court should not decide the credibility of witnesses or weigh the evidence." *In re Welfare of A.W.*, 182 Wn.2d 689, 711, 344 P.3d 1186 (2015). As we note above, even evidence that is disputed can be considered substantial and can support the superior court's finding. *Merriman*, 168 Wn.2d at 631.

This iPod incident placed H.H. and Goodwin in enough fear to seek a restraining order against Hollis that eventually resulted in a parenting plan that terminated all residential time between Hollis and H.H., as well as an agreement between Goodwin and Hollis that Hollis would not contact H.H. Therefore, this event, along with Hollis's continued attempts at contact with H.H. in contravention of the agreement between Goodwin and Hollis that Hollis not contact H.H., constitute substantial evidence sufficient to support the superior court's findings that Hollis's conduct caused H.H.'s and Goodwin's fear, and this finding in turn supports the conclusion that Hollis committed domestic violence as defined in former RCW 26.50.010(1). Accordingly, in denying the motion to revise, the superior court did not abuse its discretion.

B. PHYSICAL HARM, BODILY INJURY, OR ASSAULT

In addition, Hollis challenges the superior court's conclusion that the injury H.H. sustained during the iPod incident was the result of unlawful discipline under RCW 9A.16.100. Relying on *In re Dependency of H.S.*, 188 Wn. App. 654, 665, 356 P.3d 202 (2015), Hollis argues that the superior court abused its discretion in making this finding by substituting its beliefs of unreasonable discipline for the statutory standard. To the extent Hollis asks us to reverse the superior court's denial of his motion to revise because the superior court incorrectly concluded that he committed unlawful discipline under RCW 9A.16.100, we disagree.

Although Hollis describes the superior court's determination that the conduct was unlawful discipline under RCW 9A.16.100 as a finding of fact, it is a conclusion of law. In applying the statute to the alleged conduct, the superior court engaged in an act of legal interpretation beyond merely deciding whether the act itself occurred. *See In re Welfare of A.L.C.*, 8 Wn. App. 2d 864, 871, 439 P.3d 694 (2019). When a conclusion of law is mislabeled as a factual finding, we will construe it as a conclusion of law. *Dep't of Labor & Indus. v. Lyons Enter's., Inc.*, 186 Wn. App. 518, 529, 347 P.3d 464 (2015), *aff'd*, 185 Wn.2d 721, 374 P.3d 1097 (2016). We review a conclusion of law de novo. *Hegwine*, 162 Wn.2d at 353.

Hollis's reliance on *H.S.* is misplaced because the degree of injuries sustained by H.H. and H.S. are distinguishable. *See* 188 Wn. App. at 665. In *H.S.*, the father slapped a 16-year-old special needs child with an open hand on the mouth several times, "but there were no marks or lasting pain from any physical discipline." *Id.* RCW 9A.16.100 permits the use of "reasonable and moderate physical discipline" so long as it does not cause "'bodily harm greater than transient pain or minor temporary marks.'" *Id.* (quoting RCW 9A.16.100).

15

Here, Goodwin testified and the superior court found credible that Hollis's act of discipline caused H.H. to suffer a sprained wrist. Hollis also does not challenge the superior court's finding that H.H. sustained a sprain as a result of his attempt at corrective discipline on appeal. "Unchallenged findings of facts are verities on appeal." *A.W.*, 182 Wn.2d. at 711. A sprained wrist is more than transient pain or a minor and temporary mark and therefore exceeds the scope of reasonable and moderate physical discipline permitted by RCW 9A.16.100. *See H.S.*, 188 Wn. App. at 665. The superior court did not err in declining to revise the commissioner's conclusion that the injury sustained by H.H. exceeded the scope of reasonable discipline under RCW 9A.16.100 and that the sprain was an act of physical harm, injury, or assault constituting domestic violence under former RCW 26.50.010(1).

## C. ORDER TO SURRENDER WEAPONS

Hollis claims that the superior court erred in declining to revise the commissioner's conclusion that Hollis poses a credible threat to the physical safety of either of the protected persons in the order. Thus, Hollis claims, the order to surrender weapons that relied on this legal conclusion must be reversed. We disagree.

"Under RCW 9.41.800(3), when the court issues a domestic violence protection order that meets certain statutory conditions, the court must also order the restrained person to surrender all firearms and other dangerous weapon." *Braatz v. Braatz*, 2 Wn. App. 2d 889, 895, 413 P.3d 612, *review denied*, 190 Wn.2d 1031 (2018). The protection order met all the statutory conditions that required the superior court to also enter the order to surrender weapons under former RCW 9.41.800(3).

16

To determine whether Hollis poses a credible threat, the superior court was required to interpret the legal significance of the evidence, and therefore this determination is properly construed as a legal conclusion. *See A.L.C.*, 8 Wn. App. 2d at 871. Accordingly, we must determine whether substantial evidence supports the superior court's findings and whether those findings support the conclusion that Hollis poses a credible threat to the physical safety of the protected persons in the order. *Schermer*, 161 Wn.2d at 940.

The superior court did not specify which of its factual findings supported its conclusion that Hollis poses a credible threat to the physical safety of the persons protected by the order. In fact, the superior court believed that by granting the DVPO, he was *required* to enter the order to surrender weapons as well. This is incorrect. While the issuance of a DVPO may be based solely on a finding that the respondent to the petition has committed an act of domestic violence against the petitioner, an order to surrender weapons can be issued only if the trial court additionally concludes, among other requirements, that the respondent poses a credible threat to the physical safety of the person(s) protected by the order. RCW 26.50.030(1); former RCW 26.50.060; former RCW 9.41.800(3). The first inquiry looks to past conduct (whether the respondent committed an act of domestic violence), and the second inquiry asks the superior court to determine whether the respondent *poses*, presently or in the future, a threat to the physical safety of the person(s) protected by the order.

There is no evidence in the record that would support the conclusion that Hollis poses a credible threat to the *physical* safety of *Goodwin*. The superior court's conclusion that Hollis committed an act of domestic violence against Goodwin was based on Goodwin's reasonable fear of the threat that Hollis posed to *H.H.* The superior court relied on *Rodriguez* as the legal basis

17

for this conclusion. But there was no evidence offered and no factual finding by the superior court that Hollis had committed a physical act against Goodwin or threatened to commit a physical act against Goodwin. Goodwin's fear was based entirely on her fear for the safety of H.H.

There is, however, evidence in the record that would support the conclusion that Hollis poses a credible threat to the physical safety of H.H. First, the superior court found that Hollis sprained H.H.'s wrist in April 2016 when he pulled her out of bed. The superior court also found that following this event, Goodwin pursued a restraining order to prevent Hollis from having any contact with H.H., but Goodwin dropped the restraining order on the condition that Hollis would abide by an agreement with Goodwin that he not have any contact with H.H. unless H.H. specifically requested contact.

Second, the superior court found that in spite of this agreement, Hollis continued to contact H.H. by dropping holiday and birthday cards off at her school.

Hollis does not dispute any of these findings. Rather, Hollis relies on the fact that he did not contact H.H. for one and a half years prior to the issuance of the DVPO, with the exception of the birthday and Christmas cards that he delivered to H.H.'s school, to argue that he did not pose a credible threat to the physical safety of H.H.

However, the commissioner found that this conduct, which may have appeared "innocuous" to Hollis, created a threat to the physical safety of H.H. because H.H. "would rather end her life than have communication with Mr. Hollis." RP (Apr. 3, 2018) at 9; RP (Dec. 6, 2017) at 74.

The factual findings made by the commissioner and adopted by the superior court support the conclusion that Hollis poses a credible threat to the physical safety of H.H. Therefore, the

18

superior court did not err in declining to revise the ruling of the commissioner granting the order to surrender weapons.

## CONCLUSION

The superior court did not abuse its discretion when it denied Hollis's motion to revise the commissioner's order because its decision was based on tenable grounds. Hollis's challenge to the superior court's finding that he was the cause of H.H.'s and Goodwin's fear fails because he fails to demonstrate that these findings are unsupported by the record. Instead, he challenges only the superior court's interpretation of the evidence, which we will not disturb on appeal. *See Sherrell*, 73 Wn. App. at 600-01. In addition, the superior court correctly concluded that Hollis's act of spraining H.H's wrist was not lawful discipline under RCW 9A.16.100 because the injury was not minor or transient. Finally, the superior court's undisputed findings support its conclusion that Hollis poses a credible threat to the physical safety of H.H. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, P.J.

SUTTON, J.

19