IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

|  |  |  |
|---|---|---|
| In re Dependency of: | ) ) ) | No. 31469-3-III |
| H.S. | ) ) ) ) ) ) | UNPUBLISHED OPINION |

BROWN, J. — C.S. appealed the juvenile court's order finding his daughter, H.S., dependent under RCW 13.34.030(6)(b) and (c). H.S. turned 18 during this appeal and requested dismissal, mooting all but one of C.S.'s concerns: the collateral estoppel consequences of the court's abuse or neglect finding under RCW 13.34.030(6)(b). C.S. contends, and we agree, the juvenile court erred by abusing its discretion in applying the wrong legal standard when making its abuse or neglect finding. But because the facts warrant a possible finding of abuse under the correct legal standard, we remand without addressing C.S.'s moot error contentions concerning counsel for H.S. and the no-parent-capable finding under RCW 13.34.030(6)(c).

## FACTS

Sixteen-year old H.S. resided with her father, C.S., and her stepmother, M.S. B.L., H.S.'s biological mother, was not a caregiver for H.S. but had recently resumed contact with her daughter. H.S. has cerebral palsy; she is tube fed and, for the most

part, wheelchair-bound. She attends school and receives good grades. H.S. does not appear to have any significant mental impairment; however, she does act out by talking back, screaming, hitting, and spitting.

In October 2012, the Department of Social and Health Services (DSHS) removed H.S. from C.S.'s home after she told school officials she was afraid to go home because her father assaulted her; social worker Kathie Pete investigated. H.S. alleged her father and stepmother slapped her in the face and her father shook her and yanked her arm. H.S. related an October 18, 2012, incident where her father became angry with her and punched a hole in the wall (the "sheetrock incident"). No injuries or marks were found on H.S. H.S.'s teachers told Ms. Pete H.S. frequently talked about domestic violence in the home and her fears of not being fed if she discussed things happening in her house. At the shelter care hearing, the court placed H.S. with her paternal grandmother and her husband. B.L. did not contest the dependency.

In February 2013, the court held a contested dependency hearing concerning C.S. H.S. said she did not feel safe because C.S. was mean to her and because M.S. did not do anything to stop her father. H.S. testified C.S. hit her with an open hand on her mouth more than five times. She testified C.S. spanked her with both his hand and a belt on numerous occasions and once pushed her. While no marks showed, H.S. indicated it hurt a lot when C.S. slapped or spanked her. H.S. said M.S. slapped her once. H.S. admitted she was whining when her father hit and spanked her; she admitted to spitting on M.S. right before M.S. slapped her. H.S. related she was afraid

2

to go home because C.S. and M.S. had been fighting with each other and she saw C.S. hit M.S. H.S. discussed C.S.'s use of medical marijuana. H.S. stated she too used marijuana: C.S. would put a motorcycle helmet over her head, blow marijuana smoke into it, and close the visor. Other witnesses described H.S.'s anxieties, agitation, and negative feelings about visiting with or returning to live with C.S.

In contrast, C.S.'s witnesses testified they had never seen any abuse between C.S. and H.S. M.S. admitted to "popping" H.S. in the mouth because H.S. was disrespectful. M.S. thought no other disciplinary technique would work as disciplining H.S. was hard because no other ways existed to discipline her. M.S. said she and H.S. had a very open relationship; the fears H.S. related were that M.S. would leave like B.L. did and H.S. would not be able to see her grandmother or B.L. again. M.S. also stated C.S. never physically abused her. The hearing record shows M.S. indicated what "popping" looked like, but it was not described for the record.

C.S. testified while he does not condone corporal punishment, he did pop H.S. on her mouth and/or cheek around six times, saying he had given H.S. "a little slap to the mouth or the . . . cheek." Report of Proceedings (RP) at 303. In an earlier declaration, he declared he had "popped" H.S. "on the lips with his fingers" but did not do it "hard" after warning her about misbehavior mostly related to H.S. not brushing her teeth. Clerk's Papers (CP) at 25. As H.S. got older, he popped her more often because he had to change the way he disciplined her. Although he knew H.S. did not like being popped, C.S. related he explained each incident to her. The court found C.S.'s

3

explanation for the sheetrock incident, where he shifted the blame to H.S., not credible. C.S. admitted H.S. correctly described how she smoked marijuana but further explained that, despite thinking "it may have very well been a mistake on [his] part," he permitted H.S. to smoke marijuana because she believed smoking marijuana would lead her to walk normally. RP at 306.

The juvenile court found H.S. dependent, mainly finding she was abused or neglected and had no parent capable of adequately caring for her even though C.S. sufficiently met her significant special needs. The court specifically found "[w]hile corporal punishment may be acceptable in some instances, the court finds that it is unacceptable to slap or 'pop' a 16-year-old in the mouth as [H.S.] has described and as [C.S.] has admitted to doing." CP at 168. The court expected the dependency to be of short duration provided C.S. cooperated with the services DSHS suggested, but his cooperation was problematic.

C.S. appealed the dependency order and the court's failure to appoint counsel for H.S. Considering H.S.'s majority, her motion by counsel to dismiss this appeal as moot, and the responsive rulings by this court regarding C.S.'s collateral estoppel counter arguments (see footnote 1), our remaining focus is the juvenile court's abuse or neglect ruling in its order finding H.S. dependent.

## ANALYSIS

The issue is whether the juvenile court erred by applying an improper legal standard when ruling H.S. dependent based upon abuse or neglect. DSHS contends all

4

issues are moot. C.S. contends the abuse or neglect finding is not moot even though H.S. has reached majority because of the collateral estoppel effects of the juvenile court's ruling.[1] We first turn to collateral estoppel.

Collateral estoppel "bars relitigation of any issue that was actually litigated in a prior lawsuit." *State Farm Mut. Auto. Ins. Co. v. Avery*, 114 Wn. App. 299, 304, 57 P.3d 300 (2002) (emphasis omitted). One purpose of collateral estoppel "is to encourage respect for judicial decisions by ensuring finality." *Id.* "The question is always whether the party to be estopped had a full and fair opportunity to litigate the issue." *Id.* The answer turns on four considerations: "whether the identical issue was decided in a prior action; whether the first action resulted in a final judgment on the merits; whether the party against whom preclusion is asserted was a party to that action; and whether application of the doctrine will work an injustice." *Id.*

Our focus is the second consideration, whether a final judgment on the merits is before us. DSHS argues dismissal of C.S.'s appeal without resolution on the merits renders the juvenile court's abuse or neglect finding not final. C.S. argues the findings are still a final judgment on the merits because dismissing this appeal would not vacate the judgment. Finality is normally "conclusively established by a judgment on the merits by affirmation on appeal." *Chau v. City of Seattle*, 60 Wn. App. 115, 120, 802 P.2d 822

---

[1] This court requested supplemental briefing on whether any res judicata and/or collateral estoppel effects would attach to the dependency finding if C.S.'s appeal is dismissed as moot without a ruling on the merits. Both parties agree no res judicata effects follow as no identity of subject matter exists since H.S. has reached majority; the claim that she is dependent cannot be retried. *See Seattle First Nat'l Bank v. Kawachi*, 91 Wn.2d 223, 225, 588 P.2d 725 (1978) (stating the elements of res judicata).

5

(1991). But absolute finality is not required for collateral estoppel. *Id.* For the purposes of collateral estoppel, a final judgment "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Cunningham v. State*, 61 Wn. App. 562, 567, 811 P.2d 225 (1991) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982)).

The juvenile court's dependency order was a final judgment on the merits. Dismissing this appeal will not affect the validity of the dependency order because a voluntary dismissal will not serve to vacate what was in the first instance a final appealable order. *See Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 263-64, 956 P.2d 312 (1998) (holding a judgment awarding plaintiffs damages was a final judgment on the merits for collateral estoppel purposes even though a compromise settlement was reached during the pendency of an appeal).

Collateral estoppel applies. By entering findings under RCW 13.34.030(6)(b), the juvenile court permanently labeled C.S. a child abuser. These findings can be used to estop C.S. from attempting to collaterally attack the issue of abuse or neglect in a later legal proceeding. *See Miles v. Child Protective Servs. Dep't*, 102 Wn. App. 142, 152-53, 6 P.3d 112 (2000) (finding because the dependency court affirmatively decided the issue of whether the children were abused or neglected when it ruled the children were dependent within the meaning of former RCW 13.34.030(4) (current RCW 13.34.030(6)(b)), the parents were "bound to the proposition that their children were

6

abused or neglected" for purposes of their subsequent negligent investigation suit against the State).

Next, C.S. contends his appeal is not moot because he can still be afforded meaningful relief since notable collateral consequences flow from a dependency finding under RCW 13.34.030(6)(b).[2] We agree. "An appeal is moot where it presents purely academic issues and where it is not possible for the court to provide effective relief." *Klickitat Cnty. Citizens Against Imported Waste v. Klickitat County*, 122 Wn.2d 619, 631, 860 P.2d 1256 (1993). For example, in *In re Det. of M.K.*, 168 Wn. App. 621, 626, 279 P.3d 897 (2012), the court found an appeal from an order of civil commitment was not moot despite the commitment having ended because one of the collateral effects of commitment is that each order of commitment becomes a part of the evidence against the person in any subsequent commitment hearing. *M.K.* provides valuable guidance.

The juvenile court's labeling of C.S. as a child abuser carries collateral consequences under RCW 43.43.830(4) with RCW 43.43.832; RCW 26.44.125(2)(e); WAC 388-101-3090(1)(d); WAC 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(1)(a); WAC 388-145-0230(2)(b) and (c); WAC 388-160-195(2)(a) and (b); WAC 388-147-0110(2)(a) and (b); and WAC 388-148-0098(1) and (2). Each of these statutes and regulations puts the juvenile court's finding of abuse or neglect into play in other proceedings and licensing determinations; in many

---

[2] While we have concluded collateral consequences flow from the dependency finding under RCW 13.34.030(6)(b), no similar consequences follow from RCW 13.34.030(6)(c) (no parent capable); that portion of C.S.'s appeal is moot as is the appointment of counsel issue. *See Klickitat County*, 122 Wn.2d at 632 (stating criteria to consider when determining if a question is moot). The version of RCW 13.34.100(6)

instances, these statutes and regulations mandate an outright denial of the requested license, contract, or application because of the finding of child abuse or neglect.

DSHS does not dispute the collateral effects the dependency order will have on C.S. Instead, DSHS counters we cannot provide effective relief because in a parallel administrative proceeding not before us, an administrative law judge found C.S. committed an act of child abuse or neglect. Thus, DSHS argues even if C.S. was able to vacate the dependency order, he would still suffer the same collateral consequences and collateral estoppel effects due to the non-appealed parallel administrative finding. We do not address DSHS's argument based on matters outside our record here. DSHS has not followed RAP 9.10 to file a supplemental designation of clerk's papers. And we cannot take judicial notice of the order under ER 201. *In re Adoption of B.T.*, 150 Wn.2d 409, 415, 78 P.3d 634 (2003).[3]

Finally, we reach the dispositive issue, whether the juvenile court applied the incorrect legal standard in finding H.S. dependent based on RCW 13.34.030(6)(b). C.S. correctly argues the court appeared to substitute its personal beliefs about physical discipline over the relevant legal standard.

Juvenile courts have broad discretion in matters dealing with children's welfare. *In re Dep. of C.B.*, 61 Wn. App. 280, 287, 810 P.2d 518 (1991). A court abuses this

---

effective during this dependency no longer exists. The new version guides a judge's discretion regarding appointment of attorneys for children.

[3] DSHS's argument strengthens C.S.'s arguments regarding collateral consequences of the dependency order. This administrative finding was apparently entered as a matter of collateral estoppel in a CR 56 summary judgment context, based solely on the juvenile court's dependency order.

discretion if its decision is manifestly unreasonable or is exercised on untenable grounds or for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported by the record or was reached using the wrong legal standard. *Id.* The wrong legal standard is asserted here.

RCW 13.34.030(6)(b) defines "dependent child" as one who "[i]s abused or neglected as defined in chapter 26.44 RCW by a person legally responsible for the care of the child." "Abuse or neglect" is defined as "injury of a child by any person under circumstances which cause harm to the child's health, welfare, or safety, excluding conduct permitted under RCW 9A.16.100; or the negligent treatment or maltreatment of a child by a person responsible for . . . the child." RCW 26.44.020(1). "Negligent treatment or maltreatment" is "an act or a failure to act, or the cumulative effects of a pattern of conduct, behavior, or inaction, that evidences a serious disregard of consequences of such magnitude as to constitute a clear and present danger to a child's health, welfare, or safety." RCW 26.44.020(16); *see also* WAC 388-15-009(5)(b) (stating "[n]egligent treatment or maltreatment includes . . . [a]ctions, failures to act, or omissions that result in injury to or which create a substantial risk of injury to the physical, emotional, and/or cognitive development of a child").

Significantly, the legislature has specifically exempted the use of reasonable and moderate physical discipline by a parent for the purpose of correcting a child from the definition of "abuse or neglect." RCW 9A.16.100; *see also State v. Singleton*, 41 Wn.

9

App. 721, 723, 705 P.2d 825 (1985) ("A parent has a right to use reasonable and timely punishment to discipline a minor child within the bounds of moderation and for the best interest[s] of the child."). Modern case law analyzes the physical discipline imposed by determining "whether, in light of all the circumstances, the [parental] conduct itself, *viewed objectively*, would be considered excessive, immoderate, or unreasonable." *Singleton*, 41 Wn. App. at 723 (quotation omitted) (emphasis in original). RCW 9A.16.100 provides a nonexclusive list of unreasonable physical disciplinary actions including

> (1) [t]hrowing, kicking, burning, or cutting a child; (2) striking a child with a closed fist; (3) shaking a child under age three; (4) interfering with a child's breathing; (5) threatening a child with a deadly weapon; or (6) doing any other act that is likely to cause and which does cause bodily harm greater than transient pain or minor temporary marks.

In determining whether physical discipline is reasonable or moderate, a factfinder should consider the age, size, and condition of the child as well as the location of the injury, the nature of the misconduct, and the child's developmental level. RCW 9A.16.100; WAC 388-15-009(2).

The juvenile court found: "While corporal punishment may be acceptable in some instances, the court finds that it is unacceptable to slap or 'pop' a 16-year-old in the mouth as [H.S.] has described and as [C.S.] has admitted to doing." CP at 168. This echoes the court's oral ruling, where it stated "I don't happen to be fond of slapping any child in the face, but I know there are others that think that that may well be appropriate under the circumstances, but I certainly don't think that any child of 16 years of age,

10

whether they have special needs or not, is someone that should be popped in the mouth or slapped in the face as a form of discipline." RP at 358-59. This finding was the court's primary basis for finding H.S. dependent under RCW 13.34.030(6)(b).

The court's finding is not harmonious with the law. The law states reasonable and moderate physical discipline of a child is acceptable. While perhaps not the best way to discipline H.S., C.S.'s use of physical discipline is not unreasonable according to the statutory standard. The disciplinary methods C.S. had been employing, which included timeouts from television or writing sentences, were no longer effective as H.S. continued to talk back, exhibit violent behavior by hitting people, and spit on people. H.S. admitted she was "whining" and spitting when C.S. and M.S. slapped her; she said yelling at her did not always make her stop misbehaving. The use of an open hand as shown in this record to slap is permissible so long as it does not "cause bodily harm greater than transient pain or minor temporary marks." RCW 9A.16.100. No evidence showed long-lasting pain from C.S.'s slaps. H.S. said it hurt "a lot" when her dad slapped her, but there were no marks or lasting pain from any physical discipline.

In sum, the court based its findings on its own beliefs, substituting them for the statutory standards. While DSHS argues other evidence exists to support an abuse or neglect finding, such as C.S. assisting H.S. in smoking marijuana or the sheetrock incident, our record shows that evidence was not the basis for the court's dependency ruling. Given our analysis, we conclude the juvenile court abused its discretion by applying the wrong legal standard. However, because DSHS does point to other

11

No. 31469-3-III
*In re Dependency of H.S.*

evidence that may warrant a finding of abuse, we remand to the trial court to make the appropriate findings under the correct legal standard, if possible.

Remanded for further proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, J.

WE CONCUR:

Siddoway, C.J.

Lawrence-Berrey, J.

12