# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In re Dependency of:

J.G.,
D.O.B.: 11/19/11

No. 80442-1-I

DIVISION ONE

UNPUBLISHED OPINION

MANN, C.J. — Colton Bradley appeals the trial court's order finding that his son, J.G., was a dependent child. Bradley argues that insufficient evidence supports the trial court's findings that Bradley physically abused J.G. and that he was incapable of adequately caring for J.G. We conclude that substantial evidence supports the findings of fact, and that the findings of fact support the conclusion of law that J.G. is a dependent child. We affirm.

I.

Colton Bradley is the father of J.G., born in November 2011. J.G. lived with his mother for the first five-and-a-half years of his life. J.G.'s mother has a history of homelessness and drug use, and J.G. suffered trauma and neglect. In spring 2018, the Department of Children, Youth, and Family Services (Department) removed J.G. from his mother's care and placed him in the care of his father.[1]

---

[1] J.G.'s mother entered into an agreed order of dependency in May 2019. She is not a party to this appeal.

Citations and pin cites are based on the Westlaw online version of the cited material.

On February 1, 2019, the Department received an intake about potential abuse of J.G. At the time of the intake, J.G. was living with his father and his father's girlfriend Shawna Redding. The intake alleged that J.G. told his kindergarten teacher Elizabeth Hull that "I have purple, red marks" and "[my] dad said I'm not supposed to tell you." J.G. further reported that "I got a whooping" and "Dad hit me with a belt."

Department social worker Bailee Lane conducted a forensic interview of J.G. at his school. During the interview, J.G. reported that his father hit him 7 times with a belt on one day and 20 times on another day. He said his father spanked him in his room on his bed and that his pants and underwear had been pulled down. J.G. said the belt hit his chin when he slid down the bed during the spanking. J.G. reported feeling unsafe at his father's home. After Lane photographed bruises on J.G.'s thighs, buttocks, and chin, law enforcement placed J.G. in protective custody. Dr. Emily Brown, a child abuse pediatrician at Seattle Children's Hospital, later performed a medical consultation and determined that the injuries were consistent with non-accidental trauma.

Department case worker Grace Sorenson interviewed Bradley. Bradley admitted that he struck J.G. with a belt three times after J.G. rode his bike into the street and was almost hit by a car. Bradley asserted that he did not usually use physical discipline and that this was a "one-time thing." Bradley repeated the same story several days later at a Family Team Decision Making meeting. The team did not think Bradley was being fully honest about what happened and did not feel comfortable returning J.G. to his father's care.

On February 5, 2019, the Department filed a dependency petition alleging that J.G. was dependent under RCW 13.34.030(6)(b) and (c). The Department placed J.G. in the care of his paternal grandparents. Since moving in with his grandparents J.G. comes to school cleaner, has fewer bathroom accidents, and exhibits fewer behavioral problems.

A two-day fact-finding hearing on the dependency petition began on May 29, 2019. J.G. was seven years old at the time of trial. The court heard testimony from nine witnesses, including J.G., Dr. Brown, Hull, and Redding.

J.G. testified that his father spanked him with a leather belt "[l]ike every time when I lied." He said his father hit him with the leather end, not the metal part. One time, J.G. thought his father struck him 20 times with the belt because it felt like 20 times. He changed his mind after his father told him it was only two times because his father would not lie to him. On a separate occasion, J.G. remembered that his father struck him with the belt seven times because his father said it was one for each year of J.G.'s age.

J.G. reviewed the photographs taken of his bruises and explained them to the court. J.G. said his father caused each injury by hitting him with a belt. The spankings "felt like a burn" and hurt "a lot," and the bruises were "really sore." J.G. and Hull both testified that J.G. missed school around the time of the spankings. J.G. reported that his father told the school J.G. was sick although he was not.

J.G. also said his father imposed other consequences on him, including wall squats, raking leaves until he developed blisters, writing sentences

repeatedly, scrubbing the bathtub, and hand washing his bed sheets after a urinary accident. These consequences made J.G. feel depressed and angry. J.G. reported that he no longer receives such consequences since he started living with his grandmother.

Dr. Brown testified that, in her opinion, J.G. was physically abused and that "significant force" beyond that typically used for discipline needed to cause J.G.'s bruises. In examining the photographs, Dr. Brown noted "large amounts of bruising on the bilateral buttocks extending onto the right hip." She found this "concerning" for non-accidental trauma because the buttocks are a well-padded area of the body that requires significant force to cause bruising. She classified J.G.'s injuries as "blunt force trauma" and specified that significant force of this magnitude is like that caused by a motor vehicle accident or falling out of a multi-story building. She stated that J.G.'s bruises were caused by at least two direct blows from an object or hand, that the bruises were consistent with being hit by a belt, and that there was no alternate medical explanation for the injuries. She also stated that the injuries constituted a temporary disfigurement of J.G.'s body and that J.G. was likely in a significant amount of pain when the injury occurred and possibly afterward. Dr. Brown believed the infliction of the injury could have negative effects on J.G.'s psychological and emotional well-being.

Following the hearing, the court found J.G. dependent under RCW 13.34.030(6)(b) and (c). The court found that hitting seven-year-old J.G. with the belt was not reasonable or moderate discipline. The court also found that Bradley caused substantial injury to J.G. which went way beyond transient pain

4

or temporary marks, thereby posing a significant risk to J.G.'s psychological development. The court determined that Bradley does not have the insight or ability to understand how to appropriately discipline J.G. and that he needs services to educate him on how to manage a child who has been through trauma. Bradley appeals.

II.

Bradley argues that there was insufficient evidence to support the court's finding that J.G. is a dependent child under any statutory prong. We disagree.

"Parents have a fundamental liberty interest in the care and welfare of their minor children." In re Dependency of Schermer, 161 Wn.2d 927, 941, 169 P.3d 452 (2007). "However, the State has an interest in protecting the physical, mental, and emotional health of children." Schermer, 161 Wn.2d at 941. "Dependency proceedings are designed to protect children from harm, help parents alleviate the problems that led to intervention, and reunite families." In re Dependency of P.H.V.S., 186 Wn. App. 167, 181, 339 P.3d 225 (2015). Unlike a parental termination proceeding, a dependency hearing is "'a preliminary, remedial, nonadversary proceeding' that does not permanently deprive a parent of any rights." In re Welfare of Key, 119 Wn.2d 600, 609, 836 P.2d 200 (1992) (quoting In re Dependency of A.W., 53 Wn. App. 22, 30, 765 P.2d 307 (1988)).

To declare a child dependent, a court must find by a preponderance of the evidence that the child meets at least one of the statutory definitions of dependency under RCW 13.34.030. Key, 119 Wn.2d at 612. RCW 13.34.030(6) provides that a dependent child is any child who:

(a) Has been abandoned;

(b) Is abused or neglected as defined in chapter 26.44 RCW by a person legally responsible for the care of the child; [or]

(c) Has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development.

The trial court found J.G. dependent under RCW 13.34.030(6)(b) and (c).

We review a claim of insufficient evidence in a dependency proceeding to determine whether substantial evidence supports the trial court's findings of fact and whether those findings of fact support the trial court's conclusions of law. In re Dependency of C.M., 118 Wn. App. 643, 649, 78 P.3d 191 (2003). Evidence is substantial if, when viewed in the light most favorable to the party prevailing below, a rational trier of fact could find the fact in question by a preponderance of the evidence. In re Welfare of X.T., 174 Wn. App. 733, 737, 300 P.3d 824 (2013). Preponderance of the evidence means "more likely than not to be true." In re Dependency of M.S.D., 144 Wn. App. 468, 478, 182 P.3d 978 (2008). We do not weigh the evidence or make witness credibility determinations. In re Welfare of C.B., 134 Wn. App. 942, 953, 143 P.3d 846 (2006). We treat unchallenged findings of fact as verities on appeal. In re Interest of J.F., 109 Wn. App. 718, 722, 37 P.3d 1227 (2001).

III.

For purposes of RCW 13.34.030(6)(b), "abuse or neglect" includes "sexual abuse, sexual exploitation, or injury of a child by any person under circumstances which cause harm to the child's health, welfare, or safety, excluding conduct

permitted under RCW 9A.16.100." RCW 26.44.020(1). RCW 9A.16.100 provides that a parent may physically discipline a child provided that the action is "reasonable and moderate." The legislature has specified that chapter 26.44 RCW, which defines "abuse," does not "prohibit the reasonable use of corporal punishment as a means of discipline." RCW 26.44.015(2).

"A parent has the right to use reasonable and timely punishment to discipline a minor child within the bounds of moderation and for the best interest of the child." State v. Singleton, 41 Wn. App. 721, 723, 705 P.2d 825 (1985). "Modern case law analyzes the physical discipline imposed by determining 'whether, in light of all the circumstances, the [parental] conduct itself, viewed objectively, would be considered excessive, immoderate, or unreasonable.'" In re Dependency of H.S., 188 Wn. App 654, 664, 356 P.3d 202 (2015) (quoting Singleton, 41 Wn. App. at 723). "In determining whether physical discipline is reasonable or moderate, a fact finder should consider the age, size, and condition of the child as well as the location of the injury, the nature of the misconduct, and the child's developmental level." H.S., 188 Wn. App. at 664-65 (citing RCW 9A.16.100; WAC 388-15-009(2)). Any act that is "likely to cause and which does cause bodily harm greater than transient pain or minor temporary marks" is presumptively unreasonable. RCW 9A.16.100.

Bradley challenges these findings of fact:

44. Dr. Brown testified that the child's injuries were a temporary but substantial disfigurement of his body.

60. Hitting the child with the belt is not reasonable and moderate discipline. This is a slight and small 7-year-old child. The father

caused extensive substantial injury to the child which went way beyond transient pain or temporary marks.

61. The father does not have the insight or ability to understand how to appropriately discipline or guide the child.

68. All of the statements regarded acts of physical abuse that resulted in substantial bodily harm. Dr. Brown testified that the bruising was a substantial, but temporary disfigurement.

Bradley asserts that spanking a child with a belt as a rare form of discipline for endangering himself by riding his bike into the street is not necessarily abuse. He contends that the spanking was not presumptively unreasonable under RCW 9A.16.100 because it did not cause "bodily harm greater than transient pain or minor temporary marks." He emphasizes that Dr. Brown testified J.G.'s injuries were "transitory" and "temporarily" disfiguring and that she declined to label J.G.'s bruises as "substantial disfigurement." On this basis, Bradley asserts that the court misconstrued Dr. Brown's testimony to find that his actions constituted "substantial bodily harm" and "extensive substantial injury."

We conclude that substantial evidence supports the court's finding that Bradley's physical discipline of J.G. was not reasonable and moderate. Dr. Brown testified that J.G. suffered "blunt force trauma" and temporary disfigurement resulting from "significant force" like a motor vehicle accident or falling from a multi-story building. She specified that "significant force" means "more than that which is typically used for discipline" and that moderate force would not have caused J.G.'s injuries. Moreover, Bradley did not challenge the court's finding that "if the father's report of hitting the child with the belt over his

clothing 3 times is accurate, the force must have been truly significant to cause the injury." The finding is therefore a verity.

Further, Lane testified that any bruise more than the size of a penny on a child of J.G.'s age is concerning and shows that the discipline was not mild or moderate for the child's age. J.G., a slight and small 7-year-old child, sustained "large amounts of bruising on the bilateral buttocks extending onto the right hip." The bruising was present for several days after the spankings occurred.

Although Bradley contends that he did not intend to seriously hurt J.G. and that his explanation of the incident was consistent with the facts, the court found J.G. was "far more credible" than his father. Bradley claimed that he struck J.G. outside with the belt over his clothing three times and that it happened only once, but J.G. reported that the spankings occurred in his bedroom, that it happened on at least two separate occasions, and that his pants and underwear were pulled down. J.G. and his teacher both testified that J.G. missed school after the spanking. J.G. told Lane that his father told the school J.G. was sick, but it was really because of the bruises.

Bradley relies on State v. McKague, 172 Wn.2d 802, 805-06, 262 P.3d 1225 (2001) and State v. Ashcraft, 71 Wn. App. 44, 859 P.2d 60 (1993) to argue that J.G.'s injuries were not "substantial." His reliance is misplaced. Ashcraft and McKague are criminal cases where the defendants were convicted of second degree assault under RCW 9A.36.021(1)(a), requiring the State had to prove substantial bodily harm. But the Department need not prove "substantial bodily harm" to prove that discipline is presumptively unreasonable. It only needs to

show "bodily harm greater than transient pain or minor temporary marks." RCW 9A.16.100. Here, substantial evidence provides that J.G.'s injuries met this standard. The trial court did not err in finding J.G. dependent under RCW 13.34.030(6)(b).

IV.

Bradley also argues there is insufficient evidence to prove J.G. "[h]as no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development." RCW 13.34.030(6)(c). In determining whether a parent is able to parent under RCW 13.34.030(6)(c), the State need not prove that a parent is unfit. Schermer, 161 Wn.2d at 944. There are no specific factors the court must consider when determining whether a parent is capable of adequately parenting a child. Schermer, 161 Wn.2d at 952. Rather, the inquiry is highly fact specific. Schermer, 161 Wn.2d at 952. The statute "does not require proof of actual harm, only a 'danger' of harm." Schermer, 161 Wn.2d at 951.

In arguing that the evidence demonstrated his ability to care for J.G., Bradley asserts that no evidence shows his home was unsafe, that J.G. was at risk of substantial damage, or that J.G.'s needs were unmet. He points to the court's findings that "the father and [J.G.] love each other very much" and that "the father provided for [J.G.'s] basic needs in his home." Bradley also points to J.G.'s testimony that J.G. felt safe with his father and wanted to live with his father.

10

But as discussed above, substantial evidence establishes that the belt strikes constituted abuse. And Bradley did not challenge the court's finding that "being struck on the buttocks with a belt represents significant risk to the child's psychological development and if deployed as a long-term form of punishment, it constitutes a danger to the child's physical development." Such physical discipline caused actual harm to J.G. and, if not stopped, poses a danger of future harm. We also note that J.G. reported to Lane and other professionals that he was afraid to go home.

Bradley also asserts that he has already learned how to keep J.G. safe, noting that he completed a parenting evaluation. But Bradley did not challenge the court's finding that "[t]the father needs services to [educate] him on how to manage a child that has been through trauma as the approach he took is not appropriate."

In sum, substantial evidence supported the trial court's findings, which in turn supported the court's conclusion that J.G. was a dependent child as defined under RCW 13.34.030(6)(b) and (c).

Affirmed.

_Mann, C.J._

WE CONCUR:

_Chun, J._ _Verellen, J._