**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

Filed
Washington State
Court of Appeals
Division Two

August 15, 2023

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Welfare of:<br><br>C.W.M.,<br><br>     A Minor Child. | No.  56970-1-II<br><br><br><br>PUBLISHED OPINION |

VELJACIC, J. — J.H. appeals the juvenile court's order declaring his daughter C.M. to be a dependent child.  He also appeals the disposition order regarding C.M.'s out-of-home placement. J.H. argues that the dependency order should be reversed because substantial evidence does not support the court's dependency finding under RCW 13.34.030(6)(c) that no parent was capable of adequately caring for the child.  J.H. also argues that the disposition order should be reversed because substantial evidence does not support the court's finding that the Department of Children, Youth, and Families (Department) made reasonable efforts to prevent C.M.'s out-of-home placement.  J.H. further argues that the court's dependency order should be reversed because it was required to consider the Department's reasonable efforts to prevent out-of-home placement prior to a finding of dependency.

We decline to address J.H.'s substantial evidence challenges to the dependency and disposition orders because this case is moot.  However, despite being moot, we will address J.H.'s appeal as to whether the Department must prove its reasonable efforts prior to a dependency finding because this contested issue is a matter of continuing and substantial public interest.  In reaching the merits, we hold that, under the plain language of RCW 13.34.030(6) and RCW

56970-1-II

13.34.130, the Department is not required to show reasonable efforts prior to the court entering a *dependency* order. In contrast, the parties correctly agree that the Department must show reasonable efforts before entering a *disposition* order placing the child outside of the home. Accordingly, we affirm the dependency order.

## FACTS

K.M. gave birth to C.M. on November 17, 2020. At the time of delivery, K.M. refused to name J.H. as the biological father because he requested that K.M. not disclose his name. Soon thereafter, the Department became involved with C.M. following allegations of negligent treatment or maltreatment by K.M.

Three days after C.M.'s birth, the Department filed a dependency petition based on RCW 13.34.030(6)(c) as to K.M. and listed the alleged father as "John 'Doe." Clerk's Papers (CP) at 1. That same day, the Department filed a motion to remove C.M. and take her into custody. The juvenile court granted the motion and placed C.M. in foster care.

On February 9, 2021, almost three months after C.M.'s birth, J.H. contacted the Department, stating that he believed he was C.M.'s biological father. Zea Mendoza, the assigned Department social worker, spoke with J.H. the following day. J.H. reported that he is homeless and requested genetic testing to prove paternity.

In March, J.H. was offered his first visitation before paternity was established by a Department case worker at its Tacoma office. This first visit lasted 30 minutes.

Mendoza testified that she did not offer J.H. additional visitations because it is the Department's policy not to offer visits until paternity was established due to the lack of a legal relationship. The Department then made a referral for paternity testing.

2

56970-1-II

In June, J.H. underwent a paternity test pursuant to a stipulated court order. The results were not filed with the juvenile court until July. The results confirmed J.H. as C.M.'s biological father, and upon request of his attorney, the Department allowed J.H. to join K.M.'s next scheduled visit with C.M. in July.

J.H.'s second visit with C.M. was supervised by two Department social workers splitting the time in half. The visit lasted three hours.

On September 14, the Department filed an amended dependency petition as to J.H., alleging that C.M. was a dependent child under RCW 13.34.030(6)(c). In the petition, the Department alleged that it had "concerns regarding [J.H.'s] ability to safely parent [C.M.] given his reluctance to engage with the Department in order to show he is able to provide a safe, stable, and nurturing environment for his child." CP at 249-50. The juvenile court then held a factfinding hearing on November 8, November 17, and December 17. On December 14, as the factfinding hearing was ongoing, JH had a third visit with C.M.

On January 6, 2022, the juvenile court entered a dependency order as to J.H. under RCW 13.34.030(6)(c). Relevant for the purposes of this appeal, the court entered the following findings of fact establishing the dependency:

> 2.2    Facts
> . . . .
> A. The court finds that reasonable efforts were made by the Department to prevent or eliminate the need for removal of the child by convening a Family Team Decision Making meeting and offering the family a Voluntary Placement Agreement.
> . . . .
> P. [J.H.] cannot currently fulfill his parental obligations for [C.M.] given his lack of stable and suitable housing and demonstrated parenting skills, which is required to allow him to safety [sic] care for [C.M].
> . . . .
> W. The Court believes placing [C.M.] with [J.H.] without court ordered service would place [C.M.] at risk of harm given her age and vulnerability.

3

56970-1-II

CP at 367.

The court also entered a disposition order placing C.M. in foster care. In finding 2.5, the court found that "[the Department] made reasonable efforts to prevent or eliminate the need for removal of the child from the child's home" and that "[s]pecific services have been offered or provided to the parent(s), guardian or legal custodian and have failed to prevent the need for out-of-home placement and make it possible for the child to return home." CP at 369.

On January 21, 2022, J.H. filed a motion for discretionary review regarding the dependency order and disposition order, which we granted. While under review, the Department filed a motion to dismiss the dependency because the permanent plan to return C.M. home to her mother, K.M., had been achieved and court supervision is no longer needed. On March 20, the juvenile court entered an order dismissing the dependency.

ANALYSIS

I.    MOOTNESS

The Department argues that J.H.'s appeal is moot because the juvenile court entered an order dismissing C.M.'s dependency and returning her to K.M.'s care. We agree.

"Generally, we will not review a moot case." *In re Dependency of L.C.S.*, 200 Wn.2d 91, 99, 514 P.3d 644 (2022). "A case is moot when the appellate court can no longer provide effective relief." *Id.* at 98.

Here, we can no longer provide effective relief to J.H. because the juvenile court already dismissed the dependency at issue and returned C.M. home to K.M. Accordingly, the appeal is moot.

4

56970-1-II

J.H. argues that the issues in this appeal are not moot because the juvenile court's dependency finding under RCW 13.34.030(6)(c) could have collateral consequences in later matters in family court. We disagree.

In *In re Dependency of H.S.*, the juvenile court found C.S.'s daughter, H.S., dependent under both RCW 13.34.030(6)(b) and (c).[1] 188 Wn. App. 654, 657, 356 P.3d 202 (2015). C.S. appealed the dependency findings, but during the appeal, H.S. turned 18 and requested dismissal. *Id*.

Division Three of this court held that C.S.'s appeal as to the dependency finding under RCW 13.34.030(6)(b) was not moot because he could still be afforded meaningful relief. *Id*. at 662-63. The court reasoned that "[t]he juvenile court's labeling of C.S. as a child abuser carries collateral consequences" under various statutes and regulations. *Id*. at 662. According to the court, "[e]ach of these statutes and regulations puts the juvenile court's finding of abuse or neglect into play in other proceedings and licensing determinations; in many instances, these statutes and regulations mandate an outright denial of the requested license, contract, or application because of the finding of child abuse or neglect." *Id*.

On the other hand, Division Three held that C.S.'s appeal as to the dependency finding under RCW 13.34.030(6)(c) was moot. *Id*. at 662 n.2. The court reasoned that "[w]hile we have concluded collateral consequences flow from the dependency finding under RCW

---

[1] RCW 13.34.030(6) defines a "dependent child" as any child who:
    (a) Has been abandoned;
    (b) Is abused or neglected as defined in chapter 26.44 RCW by a person legally responsible for the care of the child;
    (c) Has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development; or
    (d) Is receiving extended foster care services, as authorized by RCW 74.13.031.

13.34.030(6)(b), no similar consequences follow from RCW 13.34.030(6)(c) (no parent capable)."

*Id.*

Here, we find the *H.S.* court's reasoning on mootness persuasive and we adopt it. J.H. is correct that a subsection (c) dependency finding can be *considered* in later dependency proceedings or other matters in family court. *See* RCW 26.09.182, .191(3), .194(1), .197(1); RCW 26.26B.020(7)(a); RCW 13.34.110(2). However, J.H.'s cited statutes do not *mandate* an adverse outcome against him like a subsection (b) dependency finding would, as the *H.S.* court observed. Moreover, a finding under (6)(c) that no parent was capable of caring for C.M., reflects the court's evaluation of the parents' ability to care for C.M. at a specific moment in time. The statutory scheme contemplates that a parent's circumstances can and often do change, resulting in the parent later being able to care for the child. Because subsection (c) dependencies are transitory in nature and do not mandate an adverse outcome against the parent in a later proceeding like a subsection (b) dependency would, there are no concrete collateral consequences for us to grant any meaningful relief from. Accordingly, we hold that the appeal is moot.

II.   MATTERS OF CONTINUING AND SUBSTANTIAL PUBLIC INTEREST

J.H. argues that we should nevertheless address the merits of his appeal because the contested issues before us involve matters of continuing and substantial public interest. We disagree with J.H. insofar as his substantial evidence challenges are concerned. However, we agree that the issue of whether the dependency statutes require a reasonable efforts finding prior to entering a dependency finding is reviewable under the public interest exception.

"If an issue presented is of continuing and substantial public importance, we may review an otherwise moot case." *In re Dependency of T.P.*, 12 Wn. App. 2d 538, 545, 458 P.3d 825 (2020). "To determine whether the contested issue is of substantial and continuing public

6

importance, we consider whether '(1) the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur.'" *Id*. (quoting *In re Marriage of Horner*, 151 Wn.2d 884, 892, 93 P.3d 124 (2004)). "We may also consider the likelihood that the issue will continue to evade review due to the short-lived nature of the facts in controversy." *Id*.

"The continuing and substantial public interest exception has been used in cases dealing with constitutional interpretation, the validity of statutes or regulations, and matters that are sufficiently important to the appellate court." *State v. Beaver*, 184 Wn.2d 321, 331, 358 P.3d 385 (2015). "This exception is not used in cases that are limited to their specific facts." *Id*. The exception has also not been used in cases that "involve statutes or regulations that have been amended [to cure the alleged illegality]." *Hart v. Dep't of Soc. & Health Servs*., 111 Wn.2d 445, 449, 759 P.2d 1206 (1988).

Here, J.H.'s substantial evidence challenges (issues 1 and 2) to the dependency order and disposition order do not meet the public interest exception. First, the issues are private in nature because they do not involve the court's application or interpretation of the law. Second, a decision on whether substantial evidence supports the findings would not provide guidance to lower courts because, as should be obvious, any determination would necessarily be limited to the facts of this case. Third, the issue does not appear likely to recur because C.M. has been returned home to K.M., and we are unaware if these specific set of facts will arise in other dependency proceedings. Accordingly, we decline to address J.H.'s substantial evidence challenges.

However, J.H.'s challenge as to whether the dependency statutes require a reasonable efforts finding prior to a dependency finding (issue 3) meets the public interest exception. First, the issue is public in nature because it involves the application and interpretation of the dependency

7

statutes.  Second, an authoritative determination would be desirable to provide future guidance to public officers because there is a lack of judicial opinions on whether the dependency statutes call for such a requirement.  Indeed, the legislature recently amended the dependency statutes and we note that nowhere in it did the legislature explicitly require the courts to make a reasonable efforts finding prior to the entering a dependency finding.  *See* LAWS OF 2021, ch. 211, § 9 (effective July 1, 2023).  Because the amended dependency statutes do not resolve the issue before us, the matter is of sufficient public importance to warrant review.  Third, the issue may likely be raised in the future given the frequency of dependencies.  Accordingly, we hold that this specific issue may be reviewed under the public interest exception.

III.     REASONABLE EFFORTS INQUIRY PRIOR TO THE ENTRY OF AN ORDER OF DEPENDENCY

J.H. asks us to hold the Department must prove that it made reasonable efforts to prevent removal before a court can find a child dependent.  Because he asserts that the Department failed to make reasonable efforts to prevent C.M.'s removal, J.H. asks us to reverse the dependency order as to him.  We disagree.

"In a dependency, as in any case, questions of statutory interpretation are reviewed de novo."  *In re Dependency of D.L.B.*, 186 Wn.2d 103, 116, 376 P.3d 1099 (2016).  "Generally, when the meaning of a statute is 'plain on its face,' a court must give effect to that meaning."  *Id.* (quotation marks omitted) (quoting *State v. Ervin,* 169 Wn.2d 815, 820, 239 P.3d 354 (2010)).  "[E]ach provision of a statute must be read together with related provisions to determine the legislative intent underlying the entire statutory scheme."  *In re Dependency of G.M.W.*, 24 Wn. App. 2d 96, 116, 519 P.3d 272 (2022), *review denied*, 1 Wn.3d 1005 (2023).  "[I]f the plain meaning of the statute is unambiguous, we end our inquiry."  *In re Dependency of E.M.*, 197 Wn.2d 492, 499, 484 P.3d 461 (2021).

56970-1-II

RCW 13.34.030 says nothing about reasonable efforts being required prior to entry of an order of dependency. RCW 13.34.030(6) defines a "[d]ependent child" as any child who:

> (a) Has been abandoned;
> (b) Is abused or neglected as defined in chapter 26.44 RCW by a person legally responsible for the care of the child;
> (c) Has no parent, guardian, or custodian capable of adequately caring for the child, such that the child is in circumstances which constitute a danger of substantial damage to the child's psychological or physical development; or
> (d) Is receiving extended foster care services, as authorized by RCW 74.13.031.

We decline to read a requirement in RCW 13.34.030(6) that the legislature omitted. *In re Welfare of J.D.*, 112 Wn.2d 164, 168, 769 P.2d 291 (1989) ("This court does not have the power to add words to existing unambiguous statutory language.").

Additionally, RCW 13.34.130 requires the Department to prove its reasonable efforts, but only as to disposition:

> If, *after* a fact-finding hearing pursuant to RCW 13.34.110, it has been proven by a preponderance of the evidence that the child is dependent within the meaning of RCW 13.34.030 *after* consideration of the social study prepared pursuant to RCW 13.34.110 and *after* a disposition hearing has been held pursuant to RCW 13.34.110, *the court shall enter an order of disposition pursuant to this section*.
> (1) The court shall order one of the following dispositions of the case:
> . . . .
> (b)(i) Order the child to be removed from his or her home and into the custody, control, and care of a relative or other suitable person, the department, or agency responsible for supervision of the child's placement. If the court orders that the child be placed with a caregiver over the objections of the parent or the department, the court shall articulate, on the record, his or her reasons for ordering the placement.
> . . . .
> (6) Placement of the child with a relative or other suitable person as described in subsection (1)(b) of this section shall be given preference by the court. *An order for out-of-home placement may be made only if the court finds that reasonable efforts have been made to prevent or eliminate the need for removal of the child from the child's home and to make it possible for the child to return home*, specifying the services, including housing assistance, that have been provided to the child and the child's parent, guardian, or legal custodian, and that prevention services have been offered or provided and have failed to prevent the need for out-

9

> of-home placement, unless the health, safety, and welfare of the child cannot be protected adequately in the home, and that:
>> (a) There is no parent or guardian available to care for such child;
>> (b) The parent, guardian, or legal custodian is not willing to take custody of the child; or
>> (c) The court finds, by clear, cogent, and convincing evidence, a manifest danger exists that the child will suffer serious abuse or neglect if the child is not removed from the home and an order under RCW 26.44.063 would not protect the child from danger.

(Emphasis added.)  Again, we will not read a requirement into RCW 13.34.130 that the legislature omitted.  *J.D.*, 112 Wn.2d at 168.

J.H. argues that the purpose of the Juvenile Court Act is to protect the family unit and, "[t]o carry out this purpose, the Department must be required to prove it made reasonable efforts to nurture the family before the court can enter a dependency order."  Br. of Appellant at 30.  In so arguing, J.H. directs our attention to Laws of 2021, ch. 211, sec. 9., contending that this newly enacted statute provides: "the Department's failure to meet its burden during shelter care 'will be considered when determining *whether reasonable efforts have been made by the department during a [dependency] hearing under RCW 13.34.110.*'"  Br. of Appellant at 30 (emphasis in original) (alterations in original) (citing LAWS OF 2021, ch. 211, § 9(j)(iii)(B)).  We disagree.

Here, J.H. adds words to the newly enacted statute that do not exist.  Instead, the cited statute provides: "Placement moves while a child is in shelter care will be considered when determining whether reasonable efforts have been made by the department during a *hearing* under RCW 13.34.110."  LAWS OF 2021, ch. 211, § 9(j)(iii)(B) (emphasis added).  In turn, RCW 13.34.110(1) requires the court to hold a factfinding hearing and the petitioner to prove, by a preponderance of the evidence, that the child is "dependent" within the meaning of RCW 13.34.030.  Again, RCW 13.34.030(6) does not require the Department to prove its reasonable efforts to establish a dependency.  And RCW 13.34.110(2) provides that, during the factfinding

10

hearing, the court may consider the past involvement of child protective services for the purpose of establishing the Department's reasonable efforts, but only as to disposition and placement. In sum, nowhere in the newly enacted statute did the legislature explicitly require a reasonable efforts finding prior to the entering a dependency finding. *See* LAWS OF 2021, ch. 211, § 9. Accordingly, J.H.'s argument fails.

J.H. also argues that, under the reasoning of *In re Dependency of K.W.*, 199 Wn.2d 131, 504 P.3d 207 (2022), "the Department must be required to prove it made reasonable efforts before the court can find a child dependent." Br. of Appellant at 32. We disagree because *K.W.* dealt with disposition and placement, which again, is distinct from determining whether a child is dependent within the meaning of RCW 13.34.030.

J.H. appears to contend the reasonable efforts inquiry should inform the court's dependency inquiry as a matter of sound public policy. But "public policy arguments do not control our interpretation of a clear statute." *State v. Bays*, 90 Wn. App. 731, 736, 954 P.2d 301 (1998). Rather, "[p]ublic policy arguments 'are more properly addressed to the Legislature, not to the courts.'" *McCaulley v. Dep't of Labor & Indust.*, 5 Wn. App. 2d 304, 316, 424 P.3d 221 (2018) (quoting *Blomster v. Nordstrom, Inc.*, 103 Wn. App. 252, 258, 11 P.3d 883 (2000)).

Because J.H.'s argument would require us to disregard the plain language of RCW 13.34.030 and RCW 13.34.130, we reject his proposition that the court was required to consider the reasonable efforts of the Department prior to finding C.M. dependent under RCW 13.34.030(6)(c).

56970-1-II

CONCLUSION

We affirm the dependency order.

_____
Veljacic, J.

We concur:

_____
Maxa, J.

_____
Glasgow, C.J.