**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE
IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
APRIL 15, 2021

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
APRIL 15, 2021

*Susan L. Carlson*

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Dependency of E.M., a minor child, | ) ) ) ) ) ) | No. 98596-1<br>En Banc<br><br>Filed: <u>April 15, 2021</u> |

OWENS, J. — This case asks whether a private attorney can represent a child in a dependency proceeding without first obtaining the court's approval. In 2018, E.M. was a three-year-old boy who had lived with his grandmother since birth as a dependent child of the State. When his grandmother sought to return to work, E.M. suddenly found himself in a custodial tug-of-war between his biological parents, his grandmother, and the State. After the dust had settled, the King County Superior Court placed E.M. in foster care—separating E.M. from his family for the first time in his young life.

E.M.'s grandmother quickly retained an attorney for E.M. for the purpose of asking the King County Superior Court to reconsider its decision. The attorney, however, was unable to meet with E.M. because the Department of Children, Youth, and Families (Department) would not provide contact details or arrange a meeting

*In re Dependency of E.M.*
No. 98596-1

with E.M. Ultimately, the court declined reconsidering E.M.'s placement in foster care because it ruled that the attorney was not appointed by the court to represent E.M. and because the representation raised numerous ethical issues. E.M.'s mother appealed this ruling, and the Court of Appeals affirmed.

Washington litigants involved in a broad range of matters enjoy the paramount right to retain a private attorney of their choice to best represent their interests— without the court's interference. Dependency proceedings carry drastic consequences that may forever dwell on a child. Children at such an important crossroads in life must also be afforded this right when they are sufficiently mature to make such a decision. However, when a child is not sufficiently mature to make such a consequential decision, the court inherently has plenary authority in deciding whether to allow a representation to proceed.

Nonetheless, circumstances may arise where an attorney must undertake a representation to protect a person's interest in limited circumstances before the attorney has had a chance to meet with the person or obtain the court's approval. Accordingly, before striking a representation, the court must first consider whether the circumstances may authorize such a limited representation. As the superior court failed to make this consideration before striking the notice of appearance, we reverse.

2

*In re Dependency of E.M.*
No. 98596-1

## I. STATEMENT OF FACTS

E.M. is a young boy who was born in 2015. He was declared to be a dependent child of the State shortly after his birth and lived with his grandmother during the following years.[1] In 2017, E.M.'s grandmother (Grandmother) sought to return to work and supported a change in placement to his mother (Mother), provided there was a visitation monitor present to monitor their contact at all times. Although Grandmother sought a return to work, ensuring E.M. had a safe place to live took precedence.

Mother petitioned for E.M. to live with her and a friend (a visitation monitor), while E.M.'s father (Father) filed a competing motion, seeking to place E.M. in foster care. The commissioner granted Mother's request. E.M. lived with Mother and the visitation monitor for a very brief time. Father moved to revise the commissioner's decision in King County Superior Court. Father asserted that Mother was alone with E.M. when the visitation monitor was at work in violation of the court's order. Father further argued that E.M. should not move back with Grandmother because Grandmother berated Father in front of E.M, thereby reducing Father's chances of

---

[1] In 2011, E.M.'s mother left E.M.'s brother in a car on the side of the road for an hour while she went to get gas with E.M.'s sister. When the mother returned, E.M.'s brother was gone. The disappearance remains unsolved. Additionally, E.M.'s biological father has since divorced E.M.'s mother and has allegedly experienced drug addiction, homelessness, and incarceration. Due to these circumstances, E.M. was declared to be a dependent child.

3

*In re Dependency of E.M.*
No. 98596-1

reunification. Instead, Father asked the court to place E.M. in foster care. The superior court agreed and ordered E.M. to be placed in foster care.

In response to the order, Grandmother quickly retained an attorney, Ms. Aimée Sutton,[2] to represent E.M. five days after E.M. was moved to foster care. The attorney was unable to meet with E.M. because the Department would not provide contact details to the attorney or allow the attorney to meet with E.M. The attorney promptly filed a notice of appearance days before filing a motion to reconsider the court's decision to place E.M. in foster care. On the same day the attorney filed the notice of appearance, the court appointed a guardian ad litem for E.M., as E.M. had been without a guardian ad litem for the previous several months.

The attorney filed a timely motion for reconsideration a few days later, noting that the turbulence of the placement changes had begun to negatively affect E.M. The attorney noted that E.M. had been moved between placements four times within a month, visited Mother less often, and had a number of meetings with Mother unexpectedly cancelled. The attorney argued that E.M.'s transition to foster care could result in significant psychological consequences as E.M. had always previously lived with a family member. The attorney advocated for E.M. to return to Grandmother, where he lived before the placement changes began.

---

[2] Ms. Sutton has since been appointed to serve as a King County Superior Court judge. No disrespect is intended by the omission of honorific terms.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Father and the Department opposed the attorney's representation of E.M. in their responses to the motion for reconsideration. At the reconsideration hearing, the court preliminarily struck the attorney's notice of appearance and refused to hear the substance of the motion. The superior court ruled that the attorney could not represent E.M. because the attorney was not appointed pursuant to RCW 13.34.100 and because the representation presented numerous ethical issues. Mother appealed the ruling, and Division I of the Court of Appeals affirmed the trial court. *In re Dependency of E.M.*, 12 Wn. App. 2d 510, 458 P.3d 810 (2020). The attorney has placed fees for this representation in trust, and the attorney has not drawn from these funds. E.M. has lived in foster care ever since.

## II. Issues Presented

1.	Does RCW 13.34.100 require that private attorneys for children in dependency proceedings be appointed by the court prior to beginning representation?

2.	Did the trial court err when it struck the attorney's notice of appearance based on the attorney's ability to comply with the Rules of Professional Conduct?

*In re Dependency of E.M.*
No. 98596-1

III. ANALYSIS

A.      *RCW 13.34.100 Does Not Require Private Attorneys for Children in Dependency*
        *Proceedings To Be Appointed by the Court*

We are first[3] tasked with determining whether RCW 13.34.100(7) requires privately retained attorneys for children in dependency proceedings to first be appointed by the court prior to beginning representation. This is a question of statutory interpretation, which we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761-62, 317 P.3d 1003 (2014).

In resolving an issue of statutory construction, we first look to the plain meaning of the statute. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). Meaning must be ascertained from the plain language of the statute, unless the statute is ambiguous in that the language "remains susceptible to more than one reasonable meaning." *Id.* at 12 (citing *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001)). Thus, if the plain meaning of the statute is unambiguous, we end our inquiry. Only when the statute is ambiguous do we resort to the aids of statutory construction and legislative history. *Id.*

---

[3] As a preliminary matter, Mother has standing to raise this issue as Mother's fundamental right to the "'custody, care and nurture of the child'" is affected when the court prohibits E.M. from obtaining private representation and results in the child's placement in foster care. *See In re Dependency of M.S.R.*, 174 Wn.2d 1, 15, 271 P.3d 234 (2012) (internal quotation marks omitted) (quoting *In re Welfare of Luscier*, 84 Wn.2d 135, 136–37, 524 P.2d 906 (1974), *overruled on other grounds by In re Dependency of M.H.P.*, 184 Wn.2d 741, 759, 364 P.3d 94 (2015)). The issue is also not moot because E.M. can obtain different private counsel after this appeal, in spite of the fact that the attorney, as a superior court judge, can no longer represent E.M.

6

*In re Dependency of E.M.*
No. 98596-1

The Department primarily asserts that RCW 13.34.100 requires that all attorneys representing children in dependency proceedings first be appointed by the court. The Department asserts that the legislature envisioned a "gatekeeping" role for courts in permitting representation of children in dependency proceedings.

For support of its position, the Department compares subsection (7)(a) of RCW 13.34.100 with subsection (7)(b):

> (7)(a) The court *may appoint an attorney* to represent the child's position in any dependency action on its own initiative, or upon the request of a parent, the child, a guardian ad litem, a caregiver, or the department.
> (b)(i) If the *court has not already appointed an attorney for a child, or the child is not represented* by a privately retained attorney:
> (A) The child's caregiver, or any individual, may refer the child to an attorney for the purposes of filing a motion to request *appointment of an attorney at public expense*; or
> (B) The child or any individual may retain an attorney for the child for the purposes of filing a motion to request *appointment of an attorney at public expense*.

RCW 13.34.100 (emphasis added).

The Department contrasts the phrase "appointment of an attorney at public expense," of subsection (7)(b)(i)(A)-(B) with the phrase "appoint an attorney" from subsection (7)(a). From this molecular distinction, the Department argues that the legislature intended that the court play a gatekeeping role to approve or deny the representation of all attorneys seeking to represent children.

The Department's interpretation is incorrect. Nowhere does RCW 13.34.100 require privately retained attorneys to seek appointment by the court. Subsection (7)(a)

7

*In re Dependency of E.M.*
No. 98596-1

does not expressly impose any obligation on an attorney to be appointed by the court but, rather, notes that the court "may" appoint counsel at its discretion. Additionally, subsection (7)(b)(i) draws a clear distinction between "appointed" counsel and "privately retained" counsel, which evidences that "privately retained counsel" is a mutually exclusive and distinct group for which there is no appointment requirement in the statute. The statute is not ambiguous as to whether private counsel must be appointed— there is no such requirement. Accordingly, we decline to apply canons of construction or look to the legislative intent of the statute.

In conclusion, RCW 13.34.100 does not impose an obligation on privately retained attorneys to first seek appointment by the court. As there is no statutory appointment requirement, several ethical and practical questions arise when third parties retain attorneys on behalf of children during dependency proceedings. We address these issues in turn.

B.     *Whether an Attorney Has Sufficient Authority To Represent a Child Depends on Whether an Attorney-Client Relationship Has Formed*

Although an attorney need not first seek court appointment, an attorney is nonetheless required to demonstrate authority for the representation when prompted. RCW 2.44.030. This raises the question as to whether an attorney has authority to properly represent a client with whom she has never even met, particularly when that client is a three-year old child who likely will not understand the nature of the proceedings or the role of an attorney. While the trial court relied in part on the Rules of

8

*In re Dependency of E.M.*
No. 98596-1

Professional Conduct (RPCs) to strike the representation, the threshold issue is whether the attorney had the requisite authority to undertake the representation.

To show that an attorney has the requisite authority to act on behalf of a client, the attorney must establish that the party represented is actually a client. *See* RCW 2.44.010 (statute confers power to bind a "*client*"). Accordingly, an attorney must demonstrate that an attorney-client relationship has been formed or that the representation is otherwise authorized by law.

And while these are the minimum requirements to exist, authority to bind a child client does not exist in a dependency proceeding where the attorney is not independent,[4] where the third party has been accused of neglecting or abusing the child, or where other conflicts with the RPCs would substantially limit the representation. *See generally In re Marriage of Wixom*, 182 Wn. App. 881, 904, 332 P.3d 1063 (2014) (the court has the inherent authority to safeguard the ethical practice of law); NAT'L ASS'N OF COUNSEL FOR CHILDREN, AMERICAN BAR ASSOCIATION STANDARDS OF PRACTICE FOR LAWYERS WHO REPRESENT CHILDREN IN ABUSE AND NEGLECT CASES std. G-1 (1996). Additionally, those with no legitimate interest in the welfare of the child are wholly without authority to obtain a lawyer on a child's behalf, absent court approval.

---

[4] An independent representation requires that the attorney does not share privileged information with the third party without the express and voluntary consent from the child and that the third party is unable to direct the representation. These requirements must be communicated by the attorney to the third party in writing. *See* NAT'L ASS'N OF COUNSEL FOR CHILDREN, AMERICAN BAR ASSOCIATION STANDARDS OF PRACTICE FOR LAWYERS WHO REPRESENT CHILDREN IN ABUSE AND NEGLECT CASES std. G-1 (1996).

*In re Dependency of E.M.*
No. 98596-1

*See* STANDARDS OF PRACTICE FOR LAWYERS WHO REPRESENT CHILDREN IN ABUSE

AND NEGLECT CASES, *supra*, std. H-5 (1996).  All of these factors must be considered

when determining whether an attorney has authority to undertake a representation on

behalf of a child in a dependency proceeding.

Addressing these factors, whether an attorney-client relationship exists depends

on whether "the attorney's advice or assistance is sought and received on legal matters,"

and on "'the client's subjective belief that it exists.'"  *Bohn v. Cody*, 119 Wn.2d 357,

363, 832 P.2d 71 (1992) (citing 1 RONALD E. MALLEN & JEFFREY SMITH, LEGAL

MALPRACTICE § 11.2 n.18, at 635 (1989); 7 AM. JUR. 2D *Attorneys at Law* § 118 (1980),

and quoting *In re McGlothlen*, 99 Wn.2d 515, 522, 663 P.2d 1330 (1983)).  Thus, a

dependent child is capable of forming an attorney-client relationship by seeking legal

advice and reasonably believing that such a relationship exists.

Whether a child is sufficiently mature to form an attorney-client relationship and,

further, to provide informed consent in the event of any conflicts of interest largely

remains a question of fact dependent on whether the child is sufficiently mature to

understand the nature of the dependency proceedings, the attorney-client relationship,

and the possibility of conflicts of interest.  When children lack such capacity, the court is

the sole authority that may permit such a representation.[5]  Here, there was no contact

---

[5] Guardians ad litem, although vested with many duties to ensure the best interest of a child are served, are not vested with the power to approve or disapprove of a representation.  *See* RCW 13.34.105.

10

*In re Dependency of E.M.*
No. 98596-1

whatsoever between the attorney and E.M., so E.M. could not authorize the

representation even if he were capable, and additionally, the attorney did not seek

approval of the court prior to beginning the representation. Nonetheless, while an

attorney-client relationship is typically the vessel that provides the attorney authority to

undertake representation, implied authority may also arise in particular circumstances

under RPC 1.14.

C.      *Before Striking a Representation Due to a Lack of Authority, the Court Must
        Consider Whether the Representation May Be Impliedly Authorized under RPC
        1.14*

While there cannot logically be an attorney-client relationship when no contact

between the putative client and the attorney has been made, an attorney is nonetheless

able to take legal action on behalf of such persons under limited circumstances on an

emergency basis pursuant to RPC 1.14:

(1) the person's "health, safety or a financial interest" must be "at risk,"

(2) the person must be "unable to establish a client-lawyer relationship. . . when

    the person or another acting in good faith on that person's behalf has

    consulted with the lawyer,"

(3) the attorney must "reasonably believe[] that the person has no other lawyer,

    agent or other representative available," and

11

*In re Dependency of E.M.*
No. 98596-1

> (4) the attorney must "take legal action on behalf of the person only to the extent reasonably necessary to maintain the status quo or otherwise avoid imminent and irreparable harm."

RPC 1.14 cmt. 9.

RPC 1.14 permits implied authorization for representation under a narrow set of circumstances, which may have arguably existed in this case. Here, the attorney knew that no guardian ad litem[6] or other attorney represented E.M. until she filed the notice of appearance, after which there remained little time to file a motion for reconsideration. The attorney was acting immediately in response to the superior court's revised order that placed young E.M. in foster care and separated him from his family for the very first time in his life. Furthermore, as the attorney argued, placing E.M. in foster care could result in unnecessary psychological harm to the child when he arguably could have returned to live with Grandmother to preserve the status quo.

Had the superior court considered these factors, it likely would have found that the attorney had implied authorization to undertake the representation.[7] It did not, however, and as a result, the court refused to hear the merits of the argument, thereby

---

[6] When a private representation exists, the court must ensure that the child has a guardian ad litem. *See* RCW 13.34.100(1). Guardians ad litem help ensure the representation is carried out independently and that the interests of the child are properly represented.

[7] We find that Ms. Sutton likely had sufficient authorization to undertake the representation and her actions did not conflict with the RPCs. Accordingly, she may withdraw fees from the funds held in trust.

12

*In re Dependency of E.M.*
No. 98596-1

possibly depriving E.M. and his biological family of years of contact. We hold today that when the court strikes an appearance due to a lack of authority, the court must consider whether the representation may otherwise be impliedly authorized under the RPCs.

A child has a significant interest in the outcome of a dependency proceeding. Where an individual with a legitimate interest in the child's welfare seeks to retain an attorney to represent the child's interest in such an important proceeding, the court must consider all sources of authority and the respective negating factors before striking the representation. Because the Attorney arguably had authority to represent E.M. on a limited basis pursuant to RPC 1.14 comment 9, we hold that the court erred by not considering all necessary factors before striking the representation.

## IV. CONCLUSION

Privately retained attorneys are not required to seek appointment by the court in dependency proceedings under RCW 13.34.100 when the child has capacity to consent to the relationship. While E.M. did not expressly consent to the representation, the superior court nonetheless erred when it struck the notice of appearance without considering whether the representation was impliedly authorized pursuant to RPC 1.14 comment 9. Here, a very young child was denied a hearing on the merits to reconsider his placement with a foster family, possibly resulting in years of lost time. The superior court should have considered all relevant RPCs and sources of authority before striking

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Dependency of E.M.*
No. 98596-1

the representation.  E.M. may retain private counsel in accordance with today's opinion.

We reverse.

_____
Owens, J.

WE CONCUR:

_____
González, C.J.

_____
Gordon McCloud, J.

_____
Johnson, J.

_____
Montoya-Lewis, J.

_____
Stephens, J.

_____
Whitener, J.

14

*In re Dependency of E.M.,* No. 98596-1 (Yu, J., concurring)

No. 98596-1

YU, J. (concurring)— I agree with the majority that RCW 13.34.100 does not require privately retained attorneys to be appointed by the court in dependency proceedings. Such a restriction is not supported by the express language of the statute nor is it reasonably implied in any provisions of the statute.

I also agree with the majority's conclusion that the trial court erred when it struck the attorney's notice of appearance without considering the implied emergency authorization under RPC 1.14. However, I write separately to reassert my belief that children are categorically entitled to legal representation at public expense in every dependency proceeding under art. I, § 3 of our state constitution.[1] The discretionary case-by-case approach to the appointment of counsel for children in these cases does not protect the right for a child to state their position and to have that position shared with the court. The risk for these children is that they

---

[1] *See also* Br. of Amici Curiae Wash. Def. Ass'n, Am. Civil Liberties Union of Wash., Univ. of Wash. Sch. of Law Children & Youth Advocacy Clinic, & Wash. Criminal Def. Lawyers in Supp. of Pet'r (Br. of Amici Curiae Wash. Def. Ass'n et al.) (arguing the same under a liberty interest); *see also* STATEWIDE CHILDREN'S REPRESENTATION WORKGROUP, MEANINGFUL LEGAL REPRESENTATION FOR CHILDREN AND YOUTH IN WASHINGTON'S CHILD WELFARE SYSTEM, STANDARDS OF PRACTICE, VOLUNTARY TRAINING, AND CASELOAD LIMITS IN RESPONSE TO HB 2735 (2010) (Children's Representation Workgroup).

1

*In re Dependency of E.M.,* No. 98596-1 (Yu, J., concurring)

will be erroneously deprived of their rights in dependency proceedings. *See In re Dependency of E.H.*, 191 Wn.2d 872, 902, 427 P.3d 587 (2018) (Yu, J., dissenting in part). As I stated in *E.H.,*

> [T]he unguided discretion that trial courts currently have in appointing counsel allows for inconsistent practices that leave many children with no voice and no one to advocate for their rights. This arrangement does not satisfy the heightened due process protections provided in this context by article I, section 3.

*Id.* at 903.

While the majority acknowledges that "[a] child has a significant interest in the outcome of a dependency proceeding," these interests are not currently protected by our system. Majority at 13. In most counties, each child in dependency proceedings is subject to the individual policies and preferences of the particular court hearing the matter, which results in disparate practices across the state. Leaving children, like three-year old E.M., with no voice or advocate in proceedings deprives them of the opportunity to be heard and to have their interests protected. As noted by amici curiae, research in our state has demonstrated that children without counsel are frequently not even mentioned in these proceedings.[2]

Finally, the majority in dicta, seems to suggest that a child's inability to authorize legal representation is why the court must retain the authority to appoint

---

[2] Br. of Amici Curiae Wash. Def. Ass'n et al. at 5-6 (citing Alicia LeVezu, *Alone and Ignored: Children Without Advocacy in Child Abuse and Neglect Courts*, 14 STAN. J.C.R. & C.L. 125, 143 (2018)).

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

counsel.  I disagree and would point to this fact as one that actually supports the

view that appointment of counsel for children should be automatic in every case.

The right to counsel does not rest on a child's capacity to consent or to

communicate with counsel or on a judge's personal belief that the child's rights are

sufficiently protected.  The right to counsel is rooted in a constitutional right to due

process and some would argue a liberty interest.  And contrary to the majority's

assertions, the Rules of Professional Conduct do not impede or prohibit an

attorney's ability to represent a child in such proceedings.  There are national

standards and guidelines for attorneys representing a child who is preverbal or

otherwise unable to communicate.  *See* AM. BAR ASS'N, ABA MODEL ACT

GOVERNING THE REPRESENTATION OF CHILDREN IN ABUSE, NEGLECT, AND

DEPENDENCY PROCEEDINGS § 7(d) cmt. (Aug. 2011), https://www.americanbar.org/

content/dam/aba/administrative/child_law/aba_model_act_2011.pdf

[https://perma.cc/MLC6-PF8Z].[3]  These standards place the attorney in the role of

advocating the child's legal interest.  Unlike the subjective best interest standard of

a guardian ad litem, "it is a role that looks to the purpose of the underlying laws

---

[3] Other resources on representing infants or preverbal children include the American Bar Association Center on Children and the Law, the National Association of Counsel for Children, the Juvenile Law Center, and Zero to Three.  Specifically, *see* Tori Porell, *Legal Representation for the Youngest Clients: A Holistic Approach*, AM. BAR ASS'N (Mar. 31, 2020), https://www.americanbar.org/groups/litigation/committees/childrens-rights/articles/2020/legal-representation-for-the-youngest-clients-a-holistic-approach/ [https://perma.cc/Y5UW-3WRF]; CANDICE L. MAZE, CHILDREN IN DEPENDENCY PROCEEDINGS: THE HALLMARKS OF EFFECTIVE, ETHICAL REPRESENTATION (Oct. 2010); Lisa Kelly & Alicia LeVezu, *Until the Client Speaks: Reviving the Legal-Interest Model for Preverbal Children*, 50 FAM. L.Q. 383 (2016); Eva J. Klain & Jenifer Goldman Fraser, *Representing Very Young Children in Child Welfare Proceedings*, 41 THE GUARDIAN 9 (2019).

*In re Dependency of E.M.,* No. 98596-1 (Yu, J., concurring)

governing whatever the stage of the proceedings and seeks to secure the child's rights within those proceedings." Commentary, Children's Representation Workgroup at 6. For example, these rights might include advocacy to support healthy physical and emotional healing after trauma or to support healthy attachments to family or siblings despite being placed out of home.

I am not persuaded that there are other sufficient safeguards in dependency proceedings to protect a child's legal rights. In an adversarial proceeding, only an attorney can effectively serve as an advocate for the child. Here, a vulnerable child required the assistance of an attorney but was denied such representation. E.M., like all children in dependency cases, has an interest in maintaining a continuous relationship with his family but, instead, was placed in foster care. E.M. also has the right to be heard on his own behalf. RCW 13.34.090(1).

The court deprived E.M. of this right to be heard when it struck the notice of appearance and refused to hear the motion to reconsider. Report of Proceedings at 21. Considering children's interests at stake in dependency cases and the high risk of deprivation of these interests under the current system, I firmly believe that every child in a dependency case should be entitled to appointed counsel. Thus, I respectfully concur only in the resolution of the narrow question posed in this case.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Dependency of E.M.,* No. 98596-1 (Yu, J., concurring)

_____
Yu, J.

_____
Madsen, J.

_____
Montoya-Lewis, J.